FILED
United States Court of Appeals
Tenth Circuit

December 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

DERMA PEN, LLC,

      Plaintiff - Appellant,

  v.

4EVERYOUNG LIMITED;
EQUIPMED INTERNATIONAL
PTY LTD, d/b/a DermapenWorld;
STENE MARSHALL, d/b/a
Dermapen World,

      Defendants - Appellees,

and

DERMAPENWORLD; BIOSOFT
(AUST) PTY LTD, d/b/a Dermapen
World,

      Defendants.

No. 13-4157

_____

**Appeal from the United States District Court
For the District of Utah
(D.C. No. 2:13-CV-00729-DN)**

_____

Samuel F. Miller, Maia T. Woodhouse, and Nicholas L. Vescovo, Baker,
Donelson, Bearman, Caldwell & Berkowitz, P.C., Nashville, Tennessee, for
Plaintiff-Appellant.

James E. Magleby, Christine T. Greenwood, Christopher M. Von Maack,
Magleby & Greenwood, P.C., Salt Lake City, Utah, for Defendants-
Appellees.

Before **KELLY**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.[*]

**BACHARACH**, Circuit Judge.

Two companies, Derma Pen, LLC and 4EverYoung, entered a sales distribution agreement. Under the agreement, Derma Pen, LLC obtained the exclusive right to use the DermaPen trademark in the United States. 4EverYoung had a contractual right of first refusal, allowing purchase of Derma Pen, LLC's U.S. trademark rights upon termination of the distribution agreement. Derma Pen, LLC terminated the agreement, and 4EverYoung wanted to exercise its contractual right of first refusal. The parties reached an impasse, and 4EverYoung started using the DermaPen trademark in the United States.

Derma Pen, LLC sued and requested a preliminary injunction to prevent 4EverYoung's use of the trademark in the United States. The district court declined the request, concluding that 4EverYoung was likely to prevail. This appeal followed, and we must ask: Is Derma Pen, LLC likely to prevail on its claims of trademark infringement and unfair competition by proving a protectable interest in the trademark? We

[*]     This Court has determined that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).

2

conclude that Derma Pen, LLC is likely to prevail by satisfying this element.  Thus, we reverse.

## I.     The Arrangement and the Litigation

The sales distribution agreement was formed so that Derma Pen, LLC and 4EverYoung could sell a micro-needling device.  The agreement provided that Derma Pen, LLC would sell the device in the United States; 4EverYoung would sell the device throughout the rest of the world.

The parties allocated trademark rights based on the sales territory; thus, Derma Pen, LLC acquired ownership of the trademark rights in the United States.  With ownership of the U.S. trademark rights, Derma Pen, LLC promised to register the "DermaPen" trademark with the United States Patent and Trademark Office.  Derma Pen, LLC complied with this requirement and began using the trademark for U.S. sales of the micro-needling device.  4EverYoung used the trademark rights to sell the device in other countries.

The two companies anticipated that one of them might terminate the agreement.  Thus, the distribution agreement provided that upon termination, Derma Pen, LLC would offer to sell its trademark rights to 4EverYoung.

Eventually, Derma Pen, LLC terminated the agreement.  4EverYoung reacted by attempting to exercise the option to buy Derma Pen, LLC's trademark rights.  With this attempt, 4EverYoung requested access to

Derma Pen, LLC's financial records to determine the value of the trademark. Derma Pen, LLC balked, and no money ever exchanged hands. Nonetheless, 4EverYoung started using the trademark to sell the micro-needling device in the United States.

Derma Pen, LLC viewed this use as an intrusion into its own territory and sued 4EverYoung and associated entities.[1] The suit involves over fifteen claims, including trademark infringement and unfair competition under the Lanham Act. In the suit, Derma Pen, LLC moved for a preliminary injunction to prevent 4EverYoung from using the trademark in the United States. The district court denied the request, reasoning that Derma Pen, LLC was not likely to prevail on the merits. Derma Pen, LLC appealed, insisting that it is likely to prevail because it continues to own the trademark rights in the United States.

We agree with Derma Pen, LLC, concluding that it is likely to prevail. The existing record would likely require findings that

- Derma Pen, LLC owns the U.S. trademark rights until they are sold, and

- no sale has taken place.

Thus, Derma Pen, LLC likely remains the owner of the trademark and the district court erred in predicting the outcome.

---

[1] From this point on, we collectively refer to 4EverYoung and its associated entities as "4EverYoung." For purposes of the appeal, the distinction between 4EverYoung and the associated entities is not material.

## II.    Our Standard of Review

In the district court, a preliminary injunction would have been appropriate if Derma Pen, LLC showed

(1)    it was likely to succeed on the merits,

(2)    the denial of the preliminary injunction would result in irreparable harm,

(3)    a balancing of equities favored a preliminary injunction, and

(4)    a preliminary injunction was consistent with the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  We ordinarily reverse the denial of a preliminary injunction only if the district court abused its discretion.  *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 775-76 (10th Cir. 2009).  But here, the district court relied largely on likelihood of success.  Because this element involves interpretation of the distribution agreement, we conduct de novo review of the district court's conclusions on likelihood of success.  *Id.* at 776.[2]

---

[2]    We have held that

(1)    matters of law are subject to de novo review and

(2)    matters of contract interpretation involve a question of law.

*See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (explaining that legal determinations are reviewed de novo in an appeal of the denial of a preliminary injunction); *In re Universal Serv. Fund Tel. Billing Practice Litig.*, 619 F.3d 1188, 1211 (10th Cir. 2010) ("Contract interpretation is a question of law . . . .").  Thus, we must conduct de novo review of the district court's contractual interpretation.

**III.    Derma Pen, LLC's Trademark Ownership and Likelihood of Success**

In seeking a preliminary injunction, Derma Pen, LLC relies on two of its Lanham Act claims:  trademark infringement (15 U.S.C. § 1114) and unfair competition (15 U.S.C. §1125(a)).  Both claims include the same elements:

(1)    Derma Pen, LLC has a protectable interest in the trademark.

(2)    4EverYoung has used an identical or similar trademark in commerce.

(3)    4EverYoung has likely confused customers by using a similar trademark.

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

In arguments to our court and the district court, 4EverYoung discusses only the first element:  Derma Pen, LLC's protectable interest in the trademark.  *See* Appellee's Br. at 17-26; Appellant's App. at 740-42. To address this element, we must interpret the distribution agreement.  *See* J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 29:8 (4th ed. 2013) (explaining that trademark ownership in a dispute between a foreign manufacturer and a U.S. distributor is governed by the parties' agreement).

6

4EverYoung concedes that Derma Pen, LLC owned rights to the trademark while the agreement was in place.[3] Appellee's Br. at 20; *see* Appellant's Sealed App. at 982-85, 994 (deposition of 4EverYoung's sole director). 4EverYoung tries to overcome this concession by arguing that these rights were extinguished by Derma Pen, LLC's termination of the agreement. Alternatively, 4EverYoung argues that it enjoys a concurrent right to use the trademark in the United States. These arguments cannot be reconciled with the distribution agreement.

Under that agreement, Derma Pen, LLC continues after the termination to have an interest in the trademark. The distribution agreement expressly provides that on termination, Derma Pen, LLC would offer to sell the U.S. trademark to 4EverYoung. This provision makes sense only if Derma Pen, LLC remains the owner after termination of the agreement; after all, a trademark can be sold only by the owner.

The parties anticipated the possibility of a sale of trademark rights upon termination of the distribution agreement, as we can tell from the right of first refusal. Until a sale takes place, however, Derma Pen, LLC likely remains the contractual owner of the U.S. trademark rights.

---

[3] 4EverYoung points out that the agreement conditioned Derma Pen, LLC's use of the trademark. These conditions do not affect ownership, for the agreement elsewhere provides: "*While not relinquishing any of its U.S. trademark rights*, [Derma Pen, LLC] agrees that it shall comply with 4EVERYOUNG's standard cooperative advertising policies, and shall use and display the 'DermaPen' trademark in accordance with such policies." Appellant's Sealed App. at 506, § 12.1 (emphasis added).

7

In the alternative, 4EverYoung argues that it shares the right to use the trademark in the United States because of Paragraph 12.1 and Derma Pen, LLC's contractual breach. We reject these arguments: 4EverYoung's interpretation of Paragraph 12.1 cannot be squared with the rest of the distribution agreement, and a breach of the agreement would not have turned 4EverYoung's contract right into a property right (ownership of the U.S. trademark rights).

4EverYoung's reliance on Paragraph 12.1 is misplaced. This paragraph states: "The parties agree that the Distributor's use of the U.S. 'Derma Pen' trademark will not infringe with 4EverYoung's use of the 'Derma Pen' trademark, and vice versa." Appellant's Sealed App. at 506, § 12.1. According to 4EverYoung, this language allows it to use the trademark in the United States. This argument cannot be reconciled with the rest of the agreement. Elsewhere, the agreement divvies up the territorial restrictions on use of the trademark: Derma Pen, LLC's territory was the United States; 4EverYoung's was the rest of the world. If the distribution agreement terminated, Derma Pen, LLC would offer to sell 4EverYoung the right to use the trademark in the United States. But an offer might or might not be accepted, and the right to use the trademark in the United States was conditioned on acceptance of the offer. Even 4EverYoung's sole director acknowledged that 4EverYoung could use the

8

trademark in the United States only if it paid "[a]n agreed value" to Derma Pen, LLC. Appellant's Sealed App. at 922, 985-86.

According to 4EverYoung, it never had an opportunity to pay an "agreed value" because Derma Pen, LLC breached the distribution agreement. But, a contractual breach would not result in automatic transfer of Derma Pen, LLC's trademark rights. "Contract rights and contractually created property rights are different." *Cromwell v. Momence*, 713 F.3d 361, 366 (7th Cir. 2013). This difference would not have been vitiated by a contractual breach.

If Derma Pen, LLC is to blame for the sale falling through, 4EverYoung might have a winning contract claim. Regardless of the validity of that blame, however, Derma Pen, LLC has not lost its property interest in the trademark.

In the absence of a sale of that property interest, Derma Pen, LLC likely continues to enjoy a protectable interest in the trademark. The district court downplayed the value of this interest, describing it as "waning." Appellant's App. at 897. But there was either a protectable interest or there was not. The "waning" value of the trademark could affect issues involving balance of the equities and irreparable injury. But the district court did not explain how the waning value of Derma Pen's trademark could affect the likelihood of success.

9

4EverYoung has not questioned Derma Pen, LLC's ability to prove any of the other elements of trademark infringement or unfair competition. Thus, on these two claims, the district court erred in concluding that 4EverYoung is likely to prevail. The likely winner is Derma Pen, LLC.

## IV. The Other Elements for a Preliminary Injunction

In denying a preliminary injunction, the district court considered not only likelihood of success, but also irreparable injury, balancing of the equities, and public interest. The district court concluded that these elements favored the defendants. But these conclusions were colored by the court's erroneous view on likelihood of success. *See, e.g.*, Appellant's App. at 898 ("[B]ecause Derma Pen has not shown that it is substantially likely to succeed on the merits of its claims, injunctive relief that would cause significant harm to Defendants is not warranted."). Without that error, we do not know how the district court would have ruled on the equitable elements. As a result, we reverse and remand for the district court to reconsider these elements based on Derma Pen, LLC's likelihood of success. *See Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 559 (10th Cir. 1984) (reversing and remanding when the district court's erroneous conclusion on "'likelihood of success'" may have affected "its resolution of the other three prerequisites" for a preliminary injunction).

**V.      Conclusion**

Accordingly, we reverse and remand for further proceedings on the elements involving irreparable injury, balancing of the equities, and public interest.